UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KUNTA KENTA GREEN  CIVIL ACTION NO. 13-cv-2312

VERSUS  JUDGE WALTER

JERRY GOODWIN  MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Kunta Kenta Green ("Petitioner") pled guilty in a Caddo Parish state court to one count of manslaughter and received an agreed 17-year sentence. The State later informed Petitioner that he was not eligible for good time credits because he had committed two or more crimes of violence as defined by state law. Petitioner filed a state court writ application and argued that the denial of good time violated his plea bargain and the Ex Post Facto Clause. The state courts denied relief, and Petitioner now seeks federal habeas corpus relief. For the reasons that follow, it is recommended that his petition be denied.

**Relevant Facts**

Petitioner was charged with second-degree murder after he shot and killed a man in a parking lot. He appeared with counsel on the day of his scheduled jury trial, and the attorneys announced that a plea agreement had been reached. The prosecutor stated: "We have agreed at this point if the defendant was pleading guilty this morning to manslaughter with a 17-year sentence the State would agree to reject any charge of possession of firearms

by a convicted felon arising out of the events which he was charged, agree not to file any type of habitual offender bill." Defense counsel replied, "I conferred with my client, and we agree with what's stated by the district attorney in this matter." Tr. 478.

The trial judge then conducted a Boykin plea colloquy. It included an explanation that Petitioner's penalty range was up to 40 years if not for the agreement, and Petitioner's statement that no promises had been made to him about his sentence other than what had been stated in open court. Tr. 481. The court accepted Petitioner's guilty plea and announced: "It is the sentence of the court that you serve 17 years at hard labor. All court costs will be paid through inmate banking, no multi-bill. This is an agreed sentence so you waive or give up any right to appeal. Do you understand that, sir?" Petitioner answered, "Yes, ma'am." Tr. 484.

Louisiana law provides that certain inmates who have been convicted of a felony may earn a diminution of sentence by good behavior, which is commonly known as "good time." La. R.S. 15:571.3. The statute was amended by Act 150 of 1994 to exclude from eligibility for good time "an inmate convicted a second time of a crime of violence as defined by R.S. 14:2(13)."

Petitioner was convicted at some point of aggravated flight from an officer. The parties appear to agree that the aggravated flight conviction was entered before 2003. Up until that time, aggravated flight from an officer was not listed as a crime of violence in La. R.S. 14:2. Act 637 of 2003 added the crime to the list. Petitioner did not commit his manslaughter offense until several years later in 2009. Tr. 481.

After Petitioner began serving his manslaughter sentence, he received correspondence from Sally Gryder with the DOC regarding his eligibility for good time. It appears that the DOC first informed Petitioner that he was not eligible for good time, but the record does not include that correspondence. The first item available is a memo from Ms. Gryder dated December 19, 2011. She stated that when Petitioner's time was first computed, it was calculated under Act 150, which is for second crimes of violence committed on or after August 24, 1994. His earlier conviction of aggravated flight was used to deny good time under Act 150. Gryder had, however, come to believe that Petitioner was eligible for good time. She reasoned: "At the time you were convicted of it (aggravated flight), [it] was not listed as a crime of violence; therefore, it cannot be used to flatten your time." Tr. 456.

Gryder later changed her mind again. She wrote on April 10, 2012 and stated that she had originally computed Petitioner's release date under Act 150 but then changed it due to the fact that aggravated flight was not defined as a crime of violence until 2003 "and I believed, at that time, that it could not be used." She stated that she had since learned that if a crime was added to the enumerated list of violent crimes before the commission of another crime of violence, it made no difference that the first crime was not defined as a crime of violence when it was committed. "The fact remains that when Aggravated Flight was added to the list of crimes of violence by the La. Legislature in 2003, the public was, at that time, placed on notice that it was a crime of violence and that the commission of another crime of violence would deny good time." Tr. 455. She added in a memo dated April 9, 2012: "Because Aggravated Flight from an Officer was enumerated as a crime of violence

*prior to the time you committed your current crime of violence*, you are not eligible for good time." Tr. 454 (emphasis in original).

Petitioner filed in state court an Extraordinary Writ of Nunc Pro Tunc Seeking Modification of Plea Bargain, etc. He argued that the denial of good time eligibility impeded him from the full benefits of his plea bargain "thus he were led to believe which was basic upon understanding with eligible earned good time credit, hence he would be out of incarceration at an earlier date than what has been calculated" under Act 150. He also argued that the calculation was a misapplication of Louisiana law. The trial court denied the application as untimely under state law and because it should have been addressed to the DOC pursuant to Louisiana statutes that govern challenges to sentence calculation issues. Tr. 393-94.

Petitioner filed a writ application with the state appellate court. He maintained his original arguments and added that the use of his aggravated flight conviction, which was not defined as a crime of violence at the time it was committed, violated ex post facto principles. Tr. 397-412. The state appellate court denied the application. It stated that any claim of excessive sentence caused by a failure to receive good time was not cognizable under state post-conviction rules and, further, Petitioner "failed to show that diminution of sentence eligibility was considered as part of his plea agreement." That court also explained that complaints about computation of the sentence should be addressed to the DOC. Tr. 432. The Supreme Court of Louisiana denied a writ application without comment. Tr. 475.

**Breach of Plea Agreement**

The Supreme Court held in Santobello v. New York, 92 S.Ct. 495, 499 (1971) that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled." A habeas petitioner who claims a breach of a plea bargain bears the burden of proving (1) exactly what the terms of the alleged promises were, (2) exactly when, where, and by whom such a promise was made, and (3) the precise identity of any eyewitnesses to the promise. Bonvillian v. Blackburn, 780 F.2d 1248, 1250-51 (5th Cir. 1986).

Petitioner makes a vague argument that he was led to believe that he would earn good time, but he points to nothing in the record to indicate that eligibility for good time was part of his plea agreement. The terms of the plea bargain were reviewed above. There was no statement on the record regarding good time eligibility, and Petitioner told the judge that there were no other terms or promises other than what had been stated in court at the hearing.

Such a promise in a plea bargain would be fairly unusual. Good time eligibility is a complex issue that is the subject of frequent legislative amendments, the interpretation of which is vested in a special administrative system with specifically prescribed avenues of judicial review. This court has never seen a provision for good time eligibility included in a plea bargain that has come before this court on habeas review. If a party contends that there was such a provision, he would need to point to specific evidence in support.

The state appellate court found that Petitioner had failed to show that diminution of sentence eligibility was considered as part of his plea agreement. Petitioner has pointed to

no facts that would allow that finding to be disturbed on habeas review. He has not met his burden on this claim.

**Ex Post Facto**

Aggravated flight from an officer was not defined as a crime of violence at the time Petitioner committed and was convicted of that crime. In 2003, the legislature included it within the definition of a crime of violence. State law had provided since 1994 that a person who is convicted of a certain number of such crimes of violence is not eligible for good time. In 2009, years after those laws were in place, Petitioner committed manslaughter. The DOC has determined that Petitioner is not eligible to earn good time on the manslaughter because he has now been convicted more than once of a crime of violence.

The application of Act 150 of 1994 to deny good time eligibility on the 2009 manslaughter does not implicate the Ex Post Facto Clause. If it did, recidivist statutes could never apply to crimes that were committed before their enactment, and courts have rejected such arguments. The Fifth Circuit did so in Ward v. Louisiana Department of Public Safety & Corrections, 547 Fed. Appx. 520 (5th Cir. 2013) (unpublished) when a Louisiana prisoner made a similar argument that his 1992 aggravated assault conviction should not be used to deny him good time under the provision of La. R.S. 15:571.3(D) enacted in 1994, which was before he committed the armed robbery offense for which he was serving a sentence. The court rejected the ex post facto challenge as frivolous, citing Gryger v. Burke, 68 S.Ct. 1256 (1948) (upholding habitual offender sentence based on statute passed after the prior crimes were committed). A district court had earlier rejected a similar argument that consideration

of a 1978 conviction constituted an ex post facto application of the 1994 amendment to the good time statute when applied to deny good time on a 1996 conviction. Payton v. Warden, 2009 WL 1255525 (W.D. La. 2009).

As those courts explained, Act 150 of 1994 put persons on notice of the consequences of a second conviction of a crime of violence. Petitioner was legally aware of those consequences at the time he committed his 2009 manslaughter, so the consideration of his past offenses to deny good time eligibility for a crime committed after the Act's effective date does not violate the Ex Post Facto Clause. Additional support for this conclusion is found in cases such as United States v. Saenz-Forero, 27 F.3d 1016 (5th Cir. 1994) (use of a 1985 drug conviction to enhance sentence did not violate Ex Post Facto Clause even though the drug conviction was not classified as an "aggravated felony" for enhancement purposes until1988).

Petitioner is not entitled to federal habeas corpus relief on a claim such as this unless the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1). There is no Supreme Court authority to support Petitioner's argument on this claim, and the decisions of lower courts have rejected his view.

**State Law Issues**

Petitioner argues that the state agency and state courts misapplied Louisiana good time laws. The habeas statute provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States. 28 U.S.C. § 2254(a). The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).

Petitioner also argues that the Louisiana courts did not comply with their own post-conviction procedure rules. This claim fails because "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001). See Kinsel v. Cain, 647 F.3d 265, 273 (5th Cir. 2011) ("no state habeas infirmities" rule barred habeas review of claim that state appellate court violated due process during postconviction proceedings).

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel

are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of July, 2016.



Mark L. Hornsby
U.S. Magistrate Judge